# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Kevin M. Murphy, Kathleen K. Murphy, James L. Lang, Charlene Ann Brady, Erika R. Hogenson, Harold J. Thompson, III, Julianne Thompson, Miriam E. Stone, May K. Vang, Jeffrey A. Kirschbaum, and Tou A. Vang,<br><br>Plaintiffs,<br><br>v.<br><br>Aurora Loan Services, LLC, Aurora Bank FSB, Mortgage Electronic Registration Systems, Inc., Wilford & Geske, P.A., and MERSCORP, Inc.,<br><br>Defendants. | Civ. No.  11-2750 (ADM/JJK)<br><br><br><br><br>**ORDER AND MEMORANDUM** |

James L. Gunn, IV, Esq., Jeffrey R. Vesel Law Office, counsel for Murphy Plaintiffs.

William B. Butler, Esq., Butler Liberty Law, LLC, counsel for all other Plaintiffs.

Eric D. Cook, Esq., and Michael R. Sauer, Esq., Wilford, Geske & Cook, P.A.; J. Matthew Goodin, Esq., and Julia C. Webb, Esq., Locke Lord LLP, counsel for Defendants.

This matter came before the Court on April 24, 2013, pursuant to Plaintiffs'

Joint Motion for Leave to File Second Amended Complaint (Doc. No. 147).

Based on the parties' submissions and arguments, together with all pleadings,

records, and files herein, the Court denies Plaintiffs' motion.  This matter is also

before the Court on its April 26, 2013 Order to Show Cause, ordering William B.

Butler to address why he should not be sanctioned for signing, filing, submitting, and advocating for claims against Wilford & Geske, P.A., in a Second Amended Complaint, in light of the Eighth Circuit's dismissal of all claims against Wilford & Geske, P.A., with prejudice in *Murphy v. Aurora Loan Services, LLC*, 699 F.3d 1027 (8th Cir. 2012).  Based on the parties' submissions, together with all pleadings, records, and files herein, the Court concludes that Rule 11 sanctions are warranted.

Accordingly, **IT IS HEREBY ORDERED** that:

1.      Plaintiffs' Joint Motion for Leave to File Second Amended Complaint (Doc. No. 147), is **DENIED**; and

2.      Pursuant to Fed. R. Civ. P. 11, attorney William Butler shall pay into Court a sanction in the amount of $25,000.  This amount is due and payable within 10 days of the issuance of this Order; and

3.      The following Memorandum is incorporated herein by reference.

Date: May 31, 2013

*s/ Jeffrey J. Keyes*
JEFFREY J. KEYES
United States Magistrate Judge

## MEMORANDUM

## I.      BACKGROUND

This Court has stated the facts underlying this case in previous orders, and the Eighth Circuit also recently summarized the facts underlying this case.  *See*

*Murphy v. Aurora Loan Servs.*, LLC, 699 F.3d 1027, 1030–31 (8th Cir. 2012).

Therefore, the Court restates only the facts relevant to the motion to amend and

Order to Show Cause here.  Plaintiffs are Minnesota homeowners who borrowed

money to purchase a home.  Each signed a promissory note, promising to repay

the loan.  As security for the promise, each executed a mortgage on which

Mortgage Electronic Registration Systems, Inc. ("MERS"), was the nominal

mortgagee.  The various lenders holding Plaintiffs' promissory notes then pooled,

securitized, and sold the notes in the secondary market.  MERS subsequently

assigned each mortgage to Aurora Loan Services, LLC, and Aurora Bank FSB

(collectively "Aurora").  After Plaintiffs defaulted on their repayment obligations,

Aurora retained the legal services of Wilford & Geske, P.A. ("W&G"), to aid them

in foreclosing on the properties pursuant to Minnesota's foreclosure-by-

advertisement statute.  Plaintiffs do not contest the validity of their initial

mortgage agreements in this lawsuit, nor do they contest their subsequent

defaults.  Rather, as originally pleaded, they allege that neither Aurora nor MERS

is entitled to foreclose on the properties and that W&G knowingly made false

representations regarding Aurora's authority to foreclose.

In their original Complaint filed in state court, Plaintiffs stated several

reasons why they believed Aurora and MERS lacked the authority to foreclose

and, among other claims, brought suit to quiet title.  After Aurora and MERS

removed the action to federal court based on the allegedly fraudulent joinder of

W&G, the District Court denied Plaintiffs' motion to remand and dismissed all of

their claims with prejudice, because it viewed the Complaint as articulating nothing more than repackaged versions of the "show-me-the-note" theory, which the Minnesota Supreme Court in *Jackson v. Mortg. Elec. Registration Sys., Inc.*, 770 N.W.2d 487, 490–91 (Minn. 2009), and this District in many cases has definitively rejected several times.  Plaintiffs then appealed the District Court's dismissal of their claims to the Eighth Circuit.

In its amended decision dated November 29, 2012, the Eighth Circuit affirmed the District Court's dismissal of W&G as fraudulently joined, partially reversed as to the dismissal of the quiet-title cause of action, and affirmed the dismissal with prejudice as to all of Plaintiffs' other claims.  On remand, this Court held a status conference in the case and determined that discovery would not commence until Defendants presented, and the District Court ruled on, a motion to dismiss that addressed the remanded quiet-title claims.  Thereafter, Defendants Aurora Loans Services, LLC, Aurora Bank FSB, Mortgage Electronic Registration Systems, Inc., and MERSCORP, Inc., filed a motion to dismiss the remanded claims.  Several weeks later, Plaintiffs filed two "amended complaints," which were both stricken because Plaintiffs failed to obtain leave of court prior to filing.  The Court then allowed Plaintiffs to file a motion seeking leave to amend, and directed Plaintiffs' counsel that they must file their motion jointly and that they must submit one joint proposed Amended Complaint.  On March 28, 2013, Plaintiffs filed their motion, and on April 24, 2013, the Court held a hearing on the matter.

Through the allegations proposed by the Plaintiffs that Mr. Butler represents ('the Butler Plaintiffs"), it is apparent that they are requesting leave to again assert claims against Wilford & Geske, P.A.  Because the Eighth Circuit had already dismissed all claims against W&G with prejudice in this case, and because when asked for his support in asserting such claims now Butler cited the case *Ruiz v. 1st Fidelity Loan Servicing, LLC*, 829 N.W.2d 53 (Minn. 2013), a case that does not support asserting claims against W&G, the Court issued an Order for Mr. Butler to show cause why he should not be sanctioned for signing, filing, submitting, and advocating for the previously dismissed claims against W&G in the proposed Second Amended Complaint.  Mr. Butler filed his response on May 16, 2013, and W&G filed its response on May 17, 2013.

## II.    DISCUSSION

### A.    Standard of Review

Except where amendment is permitted as a matter of course, under Federal Rule of Civil Procedure 15, "a party may amend its pleading only with the opposing party's written consent or the court's leave [and] [t]he court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).  The decision whether to grant leave to amend rests in the discretion of the trial court. *Niagara of Wis. Paper Corp. v. Paper Indus. Union-Mgmt. Pension Fund*, 800 F.2d 742, 749 (8th Cir. 1986).  "There is no absolute right to amend."  *Becker v. Univ. of Neb. at Omaha*, 191 F.3d 904, 908 (8th Cir. 1999).  "[E]ven where some prejudice to the adverse party would result if the motion to amend were granted,

that prejudice must be balanced against the hardship to the moving party if it is

denied." *Buder v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 644 F.2d 690, 694

(8th Cir. 1981).  "[D]enial of leave to amend pleadings is appropriate only in those

limited circumstances in which undue delay, bad faith on the part of the moving

party, futility of the amendment, or unfair prejudice to the non-moving party can

be demonstrated." *Roberson v. Hayti Police Dep't*, 241 F.3d 992, 995 (8th Cir.

2001); *see also United States ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d

552, 557–58 (8th Cir. 2006) (same).

A futility challenge to a motion to amend a complaint is successful where

"claims created by the amendment would not withstand a Motion to Dismiss for

failure to state a claim upon which relief can be granted." *DeRoche v. All Am.*

*Bottling Corp.*, 38 F. Supp. 2d 1102, 1106 (D. Minn. 1998); *see also Lunsford v.*

*RBC Dain Rauscher, Inc.*, 590 F. Supp. 2d 1153, 1158 (D. Minn. 2008) (stating

that a motion to amend is futile if the amended complaint would not survive a

motion to dismiss).  "'Likelihood of success on the new claim or defenses is not a

consideration for denying leave to amend unless the claim is clearly frivolous.'"

*Cohen v. Beachside Two-I Homeowners' Ass'n*, No. Civ. 05-706 (ADM/JSM),

2005 WL 3088361, at *13 (D. Minn. Nov. 17, 2005) (quoting *Becker*, 191 F.3d at

908).

To survive a motion to dismiss, a complaint must contain "enough facts to

state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 570 (2007).  Although a complaint need not contain "detailed

factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555.  This standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Id.* at 556.  Whether a complaint states a claim is a question of law. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986).  "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law." *Neitzke v. Williams*, 490 U.S. 319, 326 (1989).

### B.    Analysis

Here, Defendants argue that the proposed amendments should be denied because the proposed pleading does not meet Rule 8, the request to amend is untimely and made in bad faith, and because the proposed claims are futile.  The Court concludes that the proposed Second Amended Complaint does not contain a "short and plain statement of the claim showing that the pleader is entitled to relief" and that each averment is not "simple, concise, and direct" under Rule 8(a)(2) and (e)(1).

Plaintiffs originally chose to combine their claims and to file a multi-plaintiff lawsuit.  At some point on or before remand, the Murphy Plaintiffs fired Mr. Butler as their attorney and retained new counsel.  It is apparent from the proposed pleading that the Murphy Plaintiffs do not want to associate with at least some of the theories advocated by Mr. Butler and the Butler Plaintiffs – for example, the Butler Plaintiffs' continuation of asserting claims against the law firm W&G. Therein lies the problem.  After the Court struck the two Amended Complaints

that Mr. Gunn, the attorney now representing the Murphy Plaintiffs, and

Mr. Butler filed separately without leave of Court or Defendants' consent, the

Court specifically instructed the attorneys that they would have to coordinate to

provide one consolidated proposed complaint to the Court.  What the attorneys

did was combine their proposed Amended Complaints into one document, one

after the other, so that Mr. Butler's facts, claims, and signature block appears

first, and Mr. Gunn's facts, claims, and signature block appears second.  This is

not exactly what the Court intended by coordination.  The single Complaint

should have contained one section that clearly, concisely, and without

unnecessary repetition, set forth the facts and then described which claims relate

to which Plaintiffs and which Defendants.  Here, the Court acknowledges that

difficulties with the drafting of the Complaint were likely caused by the fact that

Mr. Butler has refused to drop meritless claims, and Mr. Gunn does not want to

associate with them for fear of possible Rule 11 sanctions.  But even when

accepting that the facts and claims could be separated in the document under

these circumstances so as to attribute the theories to the appropriate attorney,

the proposed pleading is still readily deficient, or, to put it more pointedly, it is a

mess.

        The proposed Second Amended Complaint is 72-pages long with close to

2,000 pages of exhibits.  More importantly, however, many of the allegations are

unclear, muddled, confusing, and redundant (i.e., not plain), or are conclusory.

In addition, neither the Butler Plaintiffs' Counts 1 and 2, nor the Murphy Plaintiffs'

Claim 1 and 2 are clear as to which Defendants the counts relate to, and the Butler Plaintiffs' counts are not clear as to which Plaintiffs are asserting which counts.  Therefore, they do not provide proper notice to the Defendants.  *See Blaylock v. Wells Fargo Bank, N.A.*, No. 12-693 (ADM/LIB), 2012 WL 2529197, at *3 (D. Minn. June 29, 2012) ("Broad pleading alleging no common facts fails to provide the requisite notice as to which Plaintiffs are asserting which claims against which Defendants.").  And, "such pleading is inadequate and . . . Rule 8 requires greater specificity[.]"  *Kraus v. CitiMortgage, Inc.*, No. 11-3213 (DWF/FLN), 2012 WL 1581113, *2 (D. Minn. May 4, 2012).

Further, where a proposed amended complaint contains "lengthy, irrelevant, and largely incomprehensible factual allegations, discussions of case law supposedly supporting claims, and argumentative responses directed at defendant's answer to the original petition," and fails to comply with Rule 8 of the Federal Rules of Civil Procedure, the pleading may be rejected based on futility, prejudice, or undue delay resulting from "the burdens of additional discovery and delay to the proceedings."  *McAninch v. Wintermute*, 491 F.3d 759, 766–67 (8th Cir. 2007).  The Court concludes that the proposed Second Amended Complaint, in its current state, "is an unwelcome and wholly unnecessary strain on defendants and on the court system."  *In re Buffets, Inc. Sec. Litig.*, 906 F. Supp. 1293, 1298 (D. Minn. 1995) (quoting *In re GlenFed, Inc.*, 42 F.3d 1541, 1553–54 (9th Cir. 1994)).  For all of the above reasons, Plaintiffs' motion to amend is denied for failure to comply with Rule 8.

Even if Rule 8 was not the barrier as described above, the proposed Second Amended Complaint could also be denied for other reasons as well, which the Court briefly comments on below.  In addition, the Court analyzes below the issue whether Mr. Butler should be sanctioned under Rule 11.

### i.   The Butler Plaintiffs' Proposed Amendments

### a.  Claims asserted against Wilford & Geske, P.A.

Although it is unclear whether the Butler Plaintiffs assert their quiet-title claim (Count 1) and their declaratory-judgment claim (Count 2) against the law firm Wilford & Geske, P.A. ("W&G"), it is clear that Counts 3 and 4 for negligence per se and slander of title are asserted against W&G.  The Eighth Circuit affirmed the dismissal, with prejudice, as to *all* claims brought against W&G, which included claims for negligence and slander of title.  *Murphy*, 699 F.3d at 1031– 32.  Specifically, the court concluded that "[t]he district court was correct in determining that all of the Homeowners' claims against W & G lacked a reasonable basis in fact and law, and therefore W & G was properly dismissed as fraudulently joined."  *Id.* at 1031.  The court explained that absent knowing participation in fraud, Minnesota law provides attorneys protection from liability to third parties.  *Id.*  And the court noted that fraud claims must be pled with particularity.  *Id.*  The court concluded that "the Homeowners failed to state with particularity any fraud-based cause of action and thus failed to assert a claim against W & G under which state law might impose liability" and determined that "W & G was properly dismissed as fraudulently joined."  *Id.* at 1032.

Significantly, the Eighth Circuit noted at the end of its opinion that the

Homeowners specifically requested that to the extent the court was dismissing

any of their claims (which would have included any claims asserted against

W&G), that they be dismissed without prejudice so that their Complaint could be

amended.  The Eighth Circuit declined the request and found that there was "no

basis to conclude an opportunity to amend would be anything but futile."  *Id.* at

1034.  Thus, the Eighth Circuit left no room for the Complaint to be amended to

fix or plead anew any claims against W&G.  Accordingly, the Butler Plaintiffs'

request to assert any claims against W&G is denied.[1]

### b.  Rule 11 Sanctions Based on Claims Asserted Against W&G

After the hearing on Plaintiffs' motion to amend, the Court sua sponte

issued an order pursuant to Fed. R. Civ. P. 11(c) requiring Mr. Butler to show

cause why he should not be sanctioned for "signing, filing, submitting, and

advocating for claims against Wilford & Geske, P.A. in a Second Amended

Complaint, in light of the Eighth Circuit's dismissal of all claims against Wilford &

Geske, P.A., with prejudice in *Murphy v. Aurora Loan Services, LLC*, 669 F.3d

---

[1]    It appears that the Butler Plaintiffs' claims for negligence per se and slander of title are only asserted against W&G.  For the reasons stated above, the Court denies their request to add those claims.  However, the request to add a claim for negligence per se must also be denied because "[n]o state or federal court has ever found a violation of Minn. Stat. §§ 580.02 or 580.05 to be negligence per se."  *Stilp v. HSBC Bank USA, N.A.*, No. 12-3098 (ADM/JJK), 2013 WL 1175025, at *2 (D. Minn. Mar. 20, 2013) (concluding that "the claims Plaintiffs raise against the resident law firms have no chance of success") (quotations omitted).

1027 (8th Cir. 2012)."  (Doc. No. 153, Order dated Apr. 26, 2013.)

Rule 11(b) requires an attorney to certify to the court that his clients'

"claims, defenses, and other legal contentions are warranted by existing law or

by a nonfrivolous argument for extending, modifying, or reversing existing law or

for establishing new law . . . ."  In determining whether this provision has been

violated, a court "must determine whether a reasonable and competent attorney

would believe in the merit of an argument."  *Coonts v. Potts*, 316 F.3d 745, 753

(8th Cir. 2003) (citation and quotations omitted).  In addition to certifying that his

arguments have a sound legal basis, the attorney must also certify that his

pleadings, written motions, and other papers are "not being presented for any

improper purpose, such as to harass, cause unnecessary delay, or needlessly

increase the cost of litigation . . . ."  Fed. R. Civ. P. 11(b)(1).  An attorney who

violates these provisions may be sanctioned.  Fed. R. Civ. P. 11(c)(1).

As discussed above, Butler has no basis for trying to re-plead claims

against W&G in this case.[2]  When asked what support he had for asserting

claims against W&G at the hearing on Plaintiffs' motion to amend, Mr. Butler

cited *Ruiz v. 1st Fidelity Loan Servicing, LLC*, 829 N.W.2d 53 (Minn. 2013).  The

Court has read *Ruiz*, and it in no way supports asserting claims against W&G.  In

*Ruiz*, the Minnesota Supreme Court held that a party must strictly comply with

---

[2]      When asked by the Court at the hearing, Mr. Gunn, the attorney for the
Murphy Plaintiffs, stated that he did not attempt to amend to add claims against
W&G because he did not have any evidence that would support such claims.

Minn. Stat. § 580.02(3), which requires that all assignments of a mortgage be recorded before a party may begin a foreclosure by advertisement. *Id.* at 54, 57–58. The opinion in no way addresses pleading claims against a law firm like W&G that was retained by an assignee to aid in foreclosing on properties pursuant to Minnesota's foreclosure-by-advertisement statute. Butler's reliance on this case fits his pattern of purposefully citing caselaw out of context in a transparent attempt to save obviously flawed legal arguments.

At the hearing, Butler also mentioned that he asserted the claims against W&G in the proposed Second Amended Complaint because W&G's counsel, who happens to also be local counsel for the other Defendants, was present at the most recent status conference. Butler's conclusion that an attorney's appearance at a status conference provides a basis for suing one of the attorney's clients is obviously frivolous.

In response to the Court's order to show cause, Mr. Butler argues that W&G "recorded documents that contained false information because the documents were execute [sic] by unauthorized persons." (Doc. No. 158, Mem. in Opp'n to Rule 11 Sanctions 8.) He then follows this with the explanation that "[t]he claim alleges that [W&G] knew the documents were false, that the documents created a cloud on Plaintiffs' title and that the Plaintiffs incurred damages in the form of attorney fees." (*Id.*) Thus, Mr. Butler has done nothing more than repeat the conclusory allegations that fail to pass muster with the Eighth Circuit and were rejected by that court. *Murphy*, 699 F.3d at 1031

13

("Absent knowing participation in fraud, none of the work performed by W & G as foreclosing attorney for Aurora can give rise to an actionable claim . . . . To pierce W & G's professional immunity by adequately pleading fraud, Homeowners must plead the circumstances of fraud with particularity.") (citations and quotations omitted). And, Mr. Butler continues to ignore the fact that the Eighth Circuit dismissed these claims with prejudice in this case. The Court concludes that the tactic of asserting claims against W&G was yet another attempt to harass a defendant and to cause unnecessary delay. *See Welk v. GMAS Mortgage, LLC*, 850 F. Supp. 2d 976, 999 (D. Minn. 2012) (stating "Butler has not only filed (at last count) nearly 30 frivolous lawsuits, but he has engaged in brazen delay tactics and judge-shopping," and ordering Butler to pay $50,000 in Rule 11 sanctions); *see also Brinkman v. Bank of America, N.A.*, No. 11-3240 (JRT/TNL), 2012 WL 3582928, at *4 (D. Minn. Aug. 17, 2012) (stating that Butler has a practice of attempting to prolong his cases as long as possible).

The Court therefore finds that Butler has once again violated Rule 11(b) by "signing, filing, submitting, [and] later advocating" claims and arguments that are neither "warranted by existing law" nor "by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law . . . ." The Court also finds that Butler has violated Rule 11(b) by presenting claims and arguments to "harass, cause unnecessary delay, [and] needlessly increase the cost of litigation . . . ."

Under Rule 11(c)(4), a sanction "must be limited to what suffices to deter

repetition of the conduct or comparable conduct by others similarly situated."  As
of the date of this Order, Butler has already been sanctioned more than $325,000
in Rule 11 sanctions and for other parties' attorney's fees.  This has not deterred
him from continuously bringing claims that he should know are frivolous.  When
United States District Court Judge Patrick Schiltz first sanctioned Mr. Butler with
a $50,000 sanction for filing the frivolous show-me-the-note claims, Judge Schiltz
stated that this significant sanction was being imposed to "deter Butler from
further misconduct of this kind."  *Welk*, 850 F. Supp. 2d at 1004.  But it did not.
Mr. Butler is a serial violator of Rule 11 and seems to wear the sanctions
imposed by this Court as a badge of honor, rather than a mark of conduct that
most attorneys would be ashamed to admit.  Despite this, however, this Court is
nevertheless limited in what it can do, at least at this point in time, to deter
Mr. Butler's conduct as an attorney appearing in this Court.  So, this Court orders
that a sanction in the amount of $25,000 be imposed against Mr. Butler for this
latest Rule 11 violation.

### c.  Declaratory-judgment claim

In Count 2 of the proposed Second Amended Complaint, the Butler
Plaintiffs ask the Court to declare that the Sheriff's Certificates of Sale, the
assignments of mortgage, and the powers of attorney are void, that the
unrecorded assignments of mortgage void the foreclosure, and that the Butler
Plaintiffs remain the owners of their property in fee title.  It appears that the Butler
Plaintiffs' theory is based on the allegations that the signatories on at least some

of these documents were unauthorized because they worked for different organizations, and on the allegations that certain assignments were not recorded.  It also appears that at least some of the Butler Plaintiffs might be seeking declaratory relief based on allegations that their notes and mortgages were transferred to trusts underlying mortgage-backed securities and that their foreclosures violated the terms of the trust agreements relating to these mortgage-backed securities.

These allegations do not comply with the pleading requirements of Rule 8(a).  *See Karnatcheva v. JPMorgan Chase Bank, N.A.*, 704 F.3d 545, 547 (8th Cir. 2013) (stating that "[t]he Federal Rules of Civil Procedure apply to declaratory judgment actions" (citing Fed. R. Civ. P. 57)).  Because the facts pled for each Plaintiff are different, it is unclear whether all of the Butler Plaintiffs are asking for all of the declarations listed in this count, or whether only some of the Plaintiffs are asking for some of the declarations.

Further, Plaintiffs' claim that some of the individuals executing assignments and powers of attorney lacked legal authority to do so fails to state a claim for which relief may be granted for the same reasons explained in *Stilp v. HSBC Bank USA, N.A.*, No. 12-3098 (ADM/JJK), 2013 WL 1175025 (D. Minn. Mar. 20, 2013):

> Plaintiffs believe the individuals executing assignments and POAs are employed by organizations other than the ones on whose behalf they have signed.  Without more, this allegation fails to establish fraud.  Even if the individuals do work for other organizations, it does not mean that they could not also work for or be hired as agents on

behalf of different clients.  Absent even an iota of evidence of fraud, these are conclusory allegations which do not state a claim for which relief may be granted.

*Id.* at *12.

Plaintiffs have also failed to state a claim for which relief can be granted with their allegations that their notes and mortgages were transferred to trusts underlying mortgage-backed securities and that their foreclosures violated the terms of the trust agreements relating to these mortgage-backed securities for the reasons explained in several opinions from this District.  These opinions uniformly conclude that mortgagors do not have standing to request declaratory judgments regarding these types of trust agreements because the mortgagors are not parties to or beneficiaries of the agreements. *See, e.g.*, *Novak v. JP Morgan Chase Bank, N.A.,* No. 12–589, 2012 WL 3638513, at *6 (D. Minn. August 23, 2012); *Greene v. Home Loan Servs., Inc.*, No. 09–719, 2010 WL 3749243, at *4 (D. Minn. Sept. 21, 2010); *see also Karnatcheva*, 871 F. Supp. 2d at 842.  And Plaintiffs have not provided factual support for their claim that certain assignments were not recorded.  *See Karnatcheva*, 871 F. Supp. 2d at 841 (concluding Plaintiffs had not provided a factual basis to support the claim that the mortgage was not properly recorded).

Finally, "[a] successful action for declaratory judgment requires a viable underlying cause of action.'" *Spine Imaging MRI, L.L.C. v. Liberty Mut. Ins. Co.*, 818 F. Supp. 2d 1133, 1144 (D. Minn. 2011) (quoting *Essling's Homes Plus, Inc. v. City of St. Paul*, 356 F. Supp. 2d 971, 984 (D. Minn. 2004)).  The viability of the

underlying cause of action for quiet title is an issue that is pending before the

District Court in this case.  Based on prior rulings from this District, it is unlikely

that Plaintiffs' quiet-title claims will survive.  *See Butler v. Fed. Nat'l Mortg. Ass'n*,

No. 12-2697 (SRN/TNL), 2013 WL 2145701, at *3–4 (D. Minn. May 15, 2013)

(dismissing quiet-title claim).  If, however, it is determined that the quiet-title

claims are viable, this Order does not preclude Plaintiffs from seeking leave to

amend to assert a declaratory-judgment action based on such a claim.  But any

such proposed amendment would, of course, have to comply with Rule 8.

### ii.   Murphy Plaintiffs' Proposed Amendments

### a.  Claim for "Alteration"

In the proposed Second Amended Complaint, the Murphy Plaintiffs assert

a new claim in which they allege that the endorsement of their Note out of

Lehman Brothers Bank, FSB, was flawed[3] and constituted a "material alteration"

of the Note, rendering their Note and Mortgage void.  Amending the Complaint to

add this claim is futile.

The Murphy Plaintiffs signed a negotiable instrument, and negotiable

instruments may be freely transferred, or "negotiated" by either an endorsement

in blank and a transfer of possession, or a specific endorsement.  *See* Minn. Stat.

---

[3]     Although not entirely clear from the proposed amended pleading, it
appears that the Murphy Plaintiffs are either asserting that the blank
endorsement was the flaw, or that an endorsement that occurred by a person
without authority, which was added later for the purposes of foreclosure, was the
flaw.

§ 336.3-201.  Based on materials embraced within their own pleadings, the

Murphy Plaintiffs consented to this type of negotiable instrument when they

expressly agreed that their lender could transfer the Note.  (Doc. No. 142, Attach.

15, page 5 of 74, at ¶ 1 ("I understand that the Lender may transfer this Note.").)

Also, the endorsement in blank or the endorsement after the fact was not

an "alteration" because an "alteration" is "an unauthorized change in an

instrument that purports to modify in any respect *the obligation of a party*."  Minn.

Stat. § 336.3-407(a) (emphasis added).  And, "[u]nless an alteration is both

material and fraudulent, it does not discharge the signer."  *See Tyrus v. OWB*

*REO, LLC*, No. 11-1773, 2011 WL 6101919, *4 (D. Minn. Oct. 25, 2011) (citing

*Midway Nat. Bank of St. Paul v. Ray*, 359 N.W.2d 644, 646 (Minn. Ct. App.

1984)).  The cases cited by the Murphy Plaintiffs find that where the change

affected the amount or due date of the obligation it was a material alteration.

*See Wood v. Steele*, 73 U.S. 80, 80 (1867) (change in due date); *Warder,*

*Bushnell & Glessner Co. v. Willyard*, 49 N.W. 300, 301 (Minn. 1891) (change in

amount); *Russell v. Reed*, 31 N.W. 452, 452 (Minn. 1997) (change in amount).

In the one case cited that relates to endorsements, *Clapper v. Gamble*, the

Eighth Circuit considered the propriety of a lender's attempt to negotiate notes by

crossing out the original payee's name, writing in his own name, and then

endorsing the notes and delivering them to another lender.  28 F.2d 755, 759

(8th Cir. 1928).  The Eighth Circuit affirmed the trial court's determination that the

lender had the authority to make these changes, concluding that the trial court's

finding was not without substantial evidence to support it.  *Id.* at 759–60.  Here,

the alleged "alteration" in the endorsement was done only to transfer ownership

of the Note, does not attempt to change any of the material provisions of the

obligation, and like in *Clapper*, was done with the authority to do so.  (*See* Doc.

No. 142, Attach. 15, page 10 of 74; *id.* at page 5 of 74, at ¶ 1 (expressly agreeing

that their lender could transfer the Note).  Therefore, the endorsement was not a

material alteration and the Murphy Plaintiffs' claim is futile.

### b. Claim for "Failure of Assignment of Mortgage, Power of Attorney, Commencement of Foreclosure and Foreclosure Sale"

The Murphy Plaintiffs' proposed Claim 3—"Failure of Assignment of

Mortgage, Power of Attorney, Commencement of Foreclosure and Foreclosure

Sale"—is not a recognized cause of action in the State of Minnesota.  Further,

the allegations underlying this purported claim appear to be duplicative of those

already alleged in the quiet-title claims.  Therefore, the request to add this claim

is denied.

### iii.    Additional facts relating to quiet-title claims

Both the Butler Plaintiffs and the Murphy Plaintiffs request leave to amend

the Complaint to add more fact allegations to support their quiet-title claims.

Their attempt, however, as explained above, does not comply with Rule 8.

Therefore, this request for leave to amend is denied.  Further, because the

viability of the quiet-title claims is an issue that is pending before the District

Court in this case, because all Plaintiffs previously had an opportunity to amend

their Complaint, and because there are significant legal issues present that could determine the viability of the quiet-title claims regardless of whether more facts are pled (for example, whether Plaintiffs have unclean hands or lack standing, which may bar Plaintiffs' claims), this Court precludes Plaintiffs from seeking further amendment to attempt to cure any Rule 8 deficiencies until after the District Court rules on the pending motion to dismiss.  Plaintiffs can argue their facts to the District Court and the District Court will determine whether any further leave to amend should be granted after ruling on the motion.

**JJK**